Filed 6/12/25  State Center Community College District v. Brambila CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE CENTER COMMUNITY COLLEGE DISTRICT, | F088370 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CECG03583) |
| v. | |
| RODOLFO BRAMBILA, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Fresno County.  Daniel J. Brickey, Judge.

Rodolfo Brambila, in Propria Persona, for Defendant and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo and Matthew T. Besmer for Plaintiff and Respondent.

-ooOoo-

In 2021, State Center Community College District (State Center) obtained a workplace violence restraining order under Code of Civil Procedure section 527.8[1] against Rodolfo Alejandro Brambila, a self-represented inmate who is currently in the

---

[1]    Undesignated statutory references are to the Code of Civil Procedure.

custody of the California Department of Corrections and Rehabilitation. Three years later, State Center sought to renew the restraining order. The trial court granted the request. Brambila appeals, contending he was denied the opportunity to cross-examine witnesses that he requested State Center to produce, the trial court did not provide him with a hearing on the renewal request, and the renewed order is overbroad. Concluding no reversible error occurred, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### State Center Obtains a Restraining Order against Brambila

In 2020, Brambila was a student at Fresno City College[2] who was enrolled in an online music class taught by Hanna York, who worked from her home. On November 3, 2020, Brambila sent text messages to York about needing help and that he was "about to do something unthinkable." York advised Brambila to get help from a doctor or counselor and she offered to help him find resources. She also advised him to call the police if he was going to do something dangerous to himself or others.

On December 1, 2020, Brambila went to York's house unannounced and uninvited. York had not given her address to Brambila. Brambila repeatedly knocked on her front door asking her to open it and talk to him. York, who was home with her two young daughters, refused and repeatedly asked him to leave. He eventually walked towards his car parked down the street. York filed a police report because of this incident.

Nine days later, Brambila returned to York's house, again unannounced and uninvited, with a firearm. Unbeknownst to York, Brambila hid in York's backyard while York's two young daughters were playing. When York went into the backyard, Brambila confronted her with a firearm. He assaulted and threatened York in front of her

---

[2] Fresno City College is one of four community colleges operated by State Center. State Center also operates Reedley College, Clovis Community College, Madera Community College, the Oakhurst Center and the Career and Technical Center.

daughters. York fought back and injured her hands, suffering scratches and bite marks. York feared for the life of herself and her daughters. York was rescued by her husband, neighbors, and the Fresno Police Department. Brambila was wearing homemade body armor and had zip ties in his possession. He was arrested and charged with eight felonies.

Because of Brambila's violent criminal conduct, York, Carole Goldsmith (the president of Fresno City College), and three other instructors who had interacted with Brambila feared for their safety and the safety of all State Center employees.

On December 15, 2020, State Center filed a petition for a workplace violence restraining order. On March 1, 2021, the trial court granted a three-year restraining order, which prohibited Brambila from having contact with York and her family, and with Fresno City College employees Melissa Wolfmann, Elisha Wells, and Cynthia Luna. The order contained personal conduct orders that required Brambila, among other things, to stay 100 yards "away from the protected persons and their residences, Fresno City College, and all campuses of the State Center Community College District," and stay-away orders requiring Brambila, among other things, to stay 100 yards away from "Fresno City College, and all campuses [of the] State Center Community College District."

Brambila appealed the restraining order. On November 10, 2022, we filed an opinion affirming the restraining order. (*State Center Community College District v. Brambila* (Nov. 10, 2022, F082744) [nonpub. opn.].)[3] Brambila did not challenge the

---

[3]    We grant State Center's request to take judicial notice of our prior opinion, filed on February 18, 2025, which we deferred ruling on pending consideration of the appeal on its merits. (Evid. Code, § 452, subd. (d); *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 382 [an appellate court may take judicial notice of the existence of judicial opinions along with the truth of the results reached].)

Further, given the relevance of the information, we grant State Center's request to take judicial notice that on June 14, 2024, a jury found that Brambila: (1) was guilty of felony attempted kidnapping; (2) assault with a firearm on York, Luke Fisher, and Daniel

3.

trial court's factual findings or argue the facts stated in the supporting declarations did not support issuance of the restraining order; rather, he argued his constitutional rights were violated when the trial court denied his request to be transported to the hearing and the superior court clerk rejected his response because it was completed in pencil. (*Id.* at p. 6.) We rejected his constitutional claims and concluded he failed to show the trial court erred in granting the restraining order. (*Id.* at p. 8.)

### State Center's Request to Renew the Restraining Order

On January 26, 2024,[4] State Center filed a request to renew the restraining order. The request was supported by the declarations of State Center's attorney, York, and Goldsmith, who is State Center's chancellor and the former president of Fresno City College.

York declared that over three years ago, she was the victim of violence and heinous crimes committed by Brambila, whose conduct upended her life and caused her physical and emotional pain. York stated that Brambila shattered her sense of safety and security, which she was working to rebuild. York asserted that Brambila remained in jail awaiting trial for the crimes he committed against her, and she continued to work at Fresno City College where he had been one of her students. York stated she was "very afraid" that if Brambila were released from custody, he would harm her and her family based on his violent behavior and his refusal to take responsibility for his conduct. York summarized the events that led to Brambila's arrest. York wanted her employer to renew

---

York; and (3) false imprisonment by violence of York. We also grant its request to take judicial notice that the jury found that Brambila personally used a firearm in the commission of these offenses, he was armed with a firearm or used a weapon when he committed the offenses, the manner in which he committed the crimes indicated planning, sophistication, or professionalism, and Brambila was legally sane when he committed these offenses. Finally, we grant the request to take judicial notice that Brambila was sentenced to 18 years eight months in prison on August 1, 2024. (Evid. Code, §§ 452, subd. (d), 452.5, subds. (a) & (b)(1).)

[4] Subsequent references to dates are to dates in the year 2024.

the restraining order and asked the court to renew and extend the restraining order for the maximum time allowed by law.

Goldsmith recounted her statements from her declaration submitted with the petition for the original restraining order. Goldsmith stated that while it had been more than three years since Brambila's violent assault against York, she remained "gravely concerned" that if Brambila were released from custody, he would pose a threat to the safety of State Center's employees and students, as she understood Brambila had not taken responsibility for his actions.

State Center's attorney authenticated the petition and supporting declarations filed in support of the original restraining order, as well as the restraining order itself. The attorney declared that Brambila remained in custody of the Fresno County jail awaiting trial on charges stemming from his December 10, 2020 crimes. On July 13, 2023, Brambila entered pleas of not guilty by reason of insanity to the eight counts filed against him. The attorney authenticated a printout from the Fresno County sheriff's website showing Brambila's custody status and the online court docket from Brambila's criminal case.

The trial court set a hearing on State Center's request for February 26.

***Brambila's Demurrer to the Renewal Request***

On February 26, Brambila filed a demurrer to the request to renew the restraining order. Brambila argued: (1) he was denied access to the March 2021 hearing because he was denied transportation to the hearing; and (2) because State Center's request for a renewed restraining order was based only on alleged wrongful acts that occurred at York's home and on her personal cellphone, and State Center did not produce any evidence of future wrongful acts at the workplace, the request was not actionable under section 527.8.

Brambila also submitted witness lists stating that he intended to examine or cross-examine Goldsmith, York, and the three other Fresno City employees who were protected

5.

under the restraining order, i.e., Wells, Wolfmann, and Luna.  He attached letters he purportedly sent to State Center's attorney in which Brambila requested the attorney to produce Goldsmith, York, Wells, Wolfmann, and Luna pursuant to section 1987, subdivision (b), and to have Goldsmith bring documents showing the addresses of all State Center campuses and facilities and the phone numbers of all State Center or Fresno City mobile phones in York's possession during the 2020 calendar year.

Finally, Brambila filed a written request for a 30-day continuance of the February 26 hearing so he could complete his response.

Brambila was present at the February 26 hearing, as was State Center's attorney. The trial court continued the hearing to February 29, so this case could be heard concurrently with another civil case involving Brambila.  Brambila was present at the February 29 hearing, along with State Center's attorney.  The trial court granted a continuance to April 4 so Brambila could prepare a response, and to give the trial court time to review it.

On March 7, Brambila filed a first amendment to the demurrer, in which he asserted additional grounds.  Brambila argued:  (1) the request for a renewed restraining order was moot as York and her family were protected by a civil harassment restraining order; (2) the restraining order was overbroad, as it included every State Center campus without specifying any employees at those campuses who need protection other than those at Fresno City College; (3) the original restraining order was not issued on the merits, since he was denied access to the court; and (4) the request for the renewed restraining order lacked specificity, as the declarations submitted in support of it, other than York's, used conclusory language and provided no factual support for those conclusions.  Brambila filed a request for the trial court to take judicial notice of the civil harassment restraining order and temporary restraining order issued in Fresno Superior Court case No. 20CECG03562.

On March 8, the superior court set the demurrer for hearing on April 4. State Center filed an opposition to the demurrer on March 21. State Center argued: (1) a demurrer cannot be used to challenge a request to renew a workplace violence restraining order, as the trial and appellate courts had upheld the original restraining order; (2) the restraining order should be renewed because there was a reasonable probability Brambila would repeat his wrongful acts if he were released from custody; (3) the restraining order is not moot because civil harassment and workplace harassment restraining orders may be issue concurrently; and (4) the restraining order is not overly broad. State Center asked the trial court to take judicial notice of our decision from the prior appeal in this action.

***The April 4 Hearing***

Brambila appeared at the April 4 hearing, along with State Center's attorney. Brambila asked State Center's attorney for the status of his request to produce witnesses and documents for the hearing. State Center's attorney informed the court that he only received a request for the initial hearing date and filed a timely objection to the request, and absent a court order, State Center did not intend to produce witnesses or documents. Brambila stated he would be moving for a contempt hearing. When the trial court asked the legal basis for that request, Brambila responded that he filed a demurrer, which should be heard first. State Center's attorney did not have an issue with the trial court ruling on the demurrer.

The trial court called the matter for purposes of hearing the demurrer. The trial court, however, had not reviewed the demurrer or the opposition, so it continued the demurrer and the harassment claim to May 13. The trial court explained that at that time it would be prepared to rule on the demurrer, but the "parties should be prepared to move forward on the other matter in the event the demurrer is denied." The minute order of the hearing, which was served on the parties, stated that the hearing is continued to May 13 "for Renewal of Workplace Violence Order and Demurrer hearing."

***Brambila's Response to the Renewal Request***

On April 12, Brambila filed a response to the renewal request, in which he asked the trial court not to renew the order. Brambila stated that for purposes of this proceeding, he did not contest that the alleged incident of December 10, 2020, may constitute "unlawful violence" as defined by section 527.8; therefore, that was not at issue. Brambila argued the restraining order should not be renewed because: (1) the incidents did not occur in the workplace and State Center did not provide any evidence there was a reasonable probability that past events at York's home would recur at the workplace; (2) York was already protected under the civil harassment restraining order issued in another case; and (3) the renewed order would be unlawfully overbroad as it includes a ban from every State Center campus. In his declaration attached to the response, Brambila stated that since being served with the restraining order, he had not had any unlawful contact with any of the individuals listed in the restraining order, he had not asked a third party to contact any of those individuals, and he had never been a student at or been present on any State Center campus other than Fresno City College.

On April 15, State Center filed objections to Brambila's second notice to produce witnesses and documents in lieu of subpoena under section 1987, which Brambila served on April 4 for the May 13 hearing.[5] State Center objected to the production of witnesses York, Goldsmith, Wolfmann, Wells, and Luna on the following grounds: (1) section 1987 does not apply to the workplace violence restraining order renewal hearing conducted pursuant to section 527.8, subdivision (k)(1), because the court has discretion to renew the restraining order without considering new evidence; (2) the testimony of these witnesses is irrelevant to determine whether to renew the restraining order; and

---

[5]     Brambila's second notice to produce witnesses and documents does not appear to be in the appellate record.

(3) Brambila failed to serve the second notice on the attorneys for York, Wolfmann, Wells, and Luna, who are not represented by State Center's attorney.

State Center also objected to the request to produce addresses of all State Center campuses and facilities and the phone numbers of all State Center and Fresno City College mobile phones in York's possession during the 2020 calendar year because section 1987, subdivision (c) does not apply to the renewal hearing, and this information is irrelevant to determine whether to renew the restraining order. State Center also objected to production of the phone numbers as violating York's right to privacy and that Brambila, as the restrained party, is not entitled to his victim's phone numbers.

***The May 13 Hearing***

Brambila and State Center's attorney appeared at the May 13 hearing. At the outset, Brambila asked State Center's attorney if he produced the witnesses and documents Brambila requested under section 1987. The attorney responded they did not, as they served an objection to his section 1987 notice request.

The trial court began by stating it would start with the demurrer and allowed Brambila to argue the demurrer. When Brambila began to describe the three incidents upon which the restraining order was based, the trial court stated they were not there to relitigate the original three instances and they were there on the "demurrer, as well as a request to renew that order." The trial court asked for Brambila's arguments with respect to the demurrer. Brambila asserted that none of the three incidents occurred at the workplace, which was a requirement of section 527.8. Brambila argued the request to renew the restraining order was immaterial and irrelevant because York was protected by a civil harassment restraining order. The trial court took judicial notice of the temporary restraining order and civil harassment restraining order issued in the other case.[6]

---

[6] On December 30, 2024, Brambila filed a request for us to take judicial notice of the civil harassment restraining order after hearing filed in Fresno Superior Court case No. 20CECG03562, which is attached as Exhibit A to his opening brief. We deferred

9.

Brambila further argued the request to renew the restraining order was overly broad, as section 527.8 did not allow other workplaces, namely, other State Center campuses, to be included unless employees or instructors at those places were also protected. Brambila contended there was no evidence that there would be a future act, either on York or any of the other individuals listed on the protective order, and while State Center believed there would be future acts, it provided no evidence that York or the other protected parties would be subjected to a future act or that a future act could occur at any of the places listed. Brambila pointed out he was denied access to the March 2021 hearing on the restraining order, and because a court reporter was not present at the hearing, it would be virtually impossible for the instant court, which did not preside over the March 2021 hearing, to rule based on the original petition. Brambila further asserted his written response in the original proceeding was improperly rejected for having been written in pencil.

When Brambila began to repeat his arguments, the trial court asked him if he had other new arguments that had not been made. Brambila responded that he wanted to point out the trial court had inherent power to correct its judgments, including those made at the March 2021 hearing. The trial court stated that they were not relitigating the original restraining order and asked if he had "any arguments with the request to renew the restraining order or the demurrer." Brambila responded that he wanted to point out that courts have held a request to renew a restraining order is not automatic; rather, it is discretionary, and the court has the power to grant or not grant it, with petitioner having the burden of proof of showing the renewal is required.

State Center's attorney asserted that any alleged errors as to the issuance of the original restraining order could not be relitigated, as the appellate court upheld the

ruling on the request pending consideration of the appeal on the merits, which we now grant.

10.

restraining order. Instead, they were there to determine whether the court should renew the restraining order, and the issue was whether there was a reasonable probability the conduct would be repeated in the future. The attorney pointed out that in making this determination the court may rely on the original record. The attorney argued there was a reasonable probability that Brambila's conduct would be repeated in the future, as Brambila did not challenge the underlying facts that he violently assaulted his instructor at her home, held her at gunpoint in front of her two young daughters, was wearing homemade body armor, and had zip ties, and that he had not expressed any remorse or apologized for his behavior and had not accepted responsibility for it. Therefore, the attorney asked the court to overrule the demurrer and grant State Center's request to renew the restraining order.

The trial court granted Brambila's request for rebuttal. Brambila asserted it was false that he had not denied any of the original allegations and while the attorney indicated the court may rely on the original record, there was no original record, as there was no court reporter. Brambila asserted the standard was not whether the attorney believed the wrongful acts would re-occur, as a belief is a conclusory statement, and facts are required. Lastly, Brambila pointed out his prior appeal was very limited and because he did not have an opportunity to cross-examine witnesses for the original restraining order since he was not at the hearing, the appeal was limited to the evidence on the record.

The trial court stated it was prepared to make its ruling. It stated: "The Court denies the demurrer, the Court renews the request for a restraining order." The trial court granted State Center's request for a three-year maximum renewal period. Brambila then stated: "Your Honor, with respect to the scope of that –" The trial court responded: "Mr. Brambila, the Court gave you a full and fair opportunity to litigate this matter. The Court has ruled." When Brambila stated, "Your Honor, there's a hearing –," the trial court

11.

responded that it was time to go. Brambila then stated he "would like to move for contempt." The trial court then went off the record.

On May 15, Brambila's reply to State Center's objections to his second notice in lieu of subpoena was filed, which he purportedly signed on May 1. Brambila argued: (1) the objections were late; (2) State Center had not properly objected to a subpoena requiring the attendance of a witness; (3) State Center did not cite any authority to support its claim that subpoenas are prohibited in a section 527.8 proceeding; (4) he could subpoena York, Wolfmann, Wells, and Lung because they were the beneficiaries of this proceeding; (5) he may challenge the findings underlying the original restraining order because it was not issued on the merits; and (6) State Center did not cite any authority to support its assertion that providing York's cellphone numbers violated her privacy interests.

### *The New Trial Motion*

On May 21, the superior court received a letter from Brambila that contained the following objections to the May 13 hearing: (1) he was denied confrontation and cross-examination of declarants York, Goldsmith, Wolfmann, Wells, and Luna; (2) he was denied a hearing on the issue of renewing the restraining order; (3) he was denied the opportunity to move for contempt for State Center's failure to abide by his subpoena under section 1987, subdivisions (b) and (c); and (4) the trial judge violated his duties under the Code of Judicial Ethics.

On May 22, Brambila filed a motion for a new trial. Brambila asserted he was denied a hearing on the request to renew the restraining order, he was denied the right to confront and cross-examine the declarants, he was denied the ability to move for contempt, and overruling the demurrer was unsupported by the evidence. The trial court denied the motion without a hearing, ruling that "[t]here was never an initial trial."

12.

## DISCUSSION

## I. Renewal of Workplace Violence Restraining Orders

A workplace violence restraining order issued under section 527.8 "may be renewed, upon the request of a party, for a duration of not more than three years, without a showing of any further harassment, unlawful violence, or credible threats of violence since the issuance of the original order …." (§ 527.8, subd. (*l*)(1).) An original restraining order and a renewed order are "subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party." (*Ibid.*) The request for renewal may be filed any time within three months before the restraining order expires. (*Ibid.*)

Although a showing of further harassment, unlawful violence, or credible threats of violence is not required, renewal is not automatic. (*Cooper v. Bettinger* (2015) 242 Cal.App.4th 77, 89 (*Cooper*) [analyzing parallel statute for civil harassment restraining orders set forth in § 527.6].) Instead, the trial court has the discretion to renew the restraining order and to determine its duration. (*Ibid.*) In *Cooper*, the appellate court addressed "the proper standard for the trial court to apply in exercising its discretion," and concluded "a restraining order should be renewed only when the trial court finds a reasonable probability that the defendant's wrongful acts would be repeated in the future." (*Id.* at p. 90.) Stated another way, "[a]n injunction restraining future conduct is only authorized when it appears that harassment is likely to recur in the future." (*Harris v. Stampolis* (2016) 248 Cal.App.4th 484, 496 (*Harris*).)

## II. Standard of Review

In deciding to renew a restraining order, the trial court has discretion to base its decision "on its review of the record of the past harassment underlying the original issuance of the restraining order and without the protected party presenting any new evidence." (*Cooper*, *supra*, 242 Cal.App.4th at p. 91.) If proof of continued harassment were required, the protected party would have to demonstrate the initial order proved

ineffectual in halting the restrained party's harassing conduct simply to obtain an extension of that ineffectual order. (*Ibid.*) Stated another way, the fact the order was effective because no further harassment occurred does not bar its renewal. (*Ibid.*)

We review the renewal order to determine whether the factual findings are supported by substantial evidence. (*City of San Jose v. Garbett* (2010) 190 Cal.App.4th 526, 538.) "Accordingly, we resolve all factual conflicts and questions of credibility in favor of the prevailing party, and draw all reasonable inferences in support of the trial court's findings." (*Ibid.*) Also, under the doctrine of implied findings, we must presume that where the record is silent, the superior court considered all the relevant factors and made all the factual findings necessary to support its decision for which there is substantial evidence. (*Brewer v. Carter* (2013) 218 Cal.App.4th 1312, 1320.)

When an appellant challenges the superior court's determination of a legal question, the reviewing court conducts an independent review, without deference to the trial court's conclusion. (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711–712 [conclusions of law are reviewed de novo]; see *Eneaji v. Ubboe* (2014) 229 Cal.App.4th 1457, 1463 ["whether a trial court applied the correct legal standard to an issue in exercising its discretion is a question of law"].)

Our review in this appeal is limited to the renewal order only. "At the point where a protected party seeks a renewal of a restraining order and the restrained party has either failed to appeal … or has lost on appeal, the restrained party cannot challenge the findings and evidence underlying that original order nor the validity of that order." (*Cooper*, *supra*, 242 Cal.App.4th at p. 92.) Here, Brambila appealed the issuance of the original restraining order, which we affirmed. He cannot now challenge the order's validity or the evidentiary basis of the underlying facts.

### III.    The Right to Cross-Examine Declarants

Brambila contends his equal protection and due process rights were violated because he was denied the opportunity to cross-examine the witnesses he requested to

attend the hearing by serving State Center's attorney with a notice to appear pursuant to section 1987, subdivision (b).[7] He asserts that because State Center presented new declarations from York and Goldsmith in support of the request to renew the restraining order, he was entitled to cross-examine them about the new evidence presented. He further asserts the trial court prevented him from moving for contempt or sanctions based on State Center's disregard of the notice to appear.

In a civil proceeding, "the right to confront and cross-examine witnesses derives from the due process clauses of the state and federal constitutions." (*San Diego Police Dept. v. Geoffrey S.* (2022) 86 Cal.App.5th 550, 574, citing *People v. Orey* (2021) 63 Cal.App.5th 529, 559.) "When the petitioner calls live witnesses at a [restraining order] hearing, the respondent has a due process right to confront and cross-examine them. (See, e.g., *CSV Hospitality Management, LLC v. Lucas* (2022) 84 Cal.App.5th 117, 124–125 [right to cross-examine testifying witness at workplace violence restraining order hearing].) "Likewise, if the petitioner relies on hearsay evidence, the respondent has a due process right to call the hearsay declarants and cross-examine them on the stand." (*Geoffrey S.*, at pp. 574–575.)

Brambila is correct, therefore, that he had a due process right to call the hearsay declarants and cross-examine them as witnesses at the hearing to renew the restraining order, subject to the trial court's inherent authority to properly manage such a hearing and make decisions about the admission of relevant evidence. Since the witnesses were not

---

[7] Section 1987, subdivision (b) "sets forth a mechanism by which a party may compel the attendance of another party by serving that party with a notice to appear." (*In re Marriage of George & Deamon* (2019) 35 Cal.App.5th 476, 482; § 1987, subd. (b) ["In the case of the production of a party to the record of any civil action or proceeding or of a person for whose immediate benefit an action or proceeding is prosecuted or defended or of anyone who is an officer, director, or managing agent of any such party or person, the service of a subpoena upon any such witness is not required if written notice requesting the witness to attend before a court, or at a trial of an issue therein, with the time and place thereof, is served upon the attorney or that party or person."].)

present at the hearing, Brambila was required to obtain their attendance through subpoena or a request to attend the hearing. He tried to do so by serving State Center's counsel with a notice to appear requesting State Center to produce witnesses York, Goldsmith, Wolfmann, Wells, and Luna, which State Center objected to on multiple grounds. These witnesses were not present at the May 13 hearing.

We need not decide whether Brambila properly requested the attendance of these witnesses or the validity of State Center's objections to Brambila's request because even if Brambila was improperly deprived of the ability to cross-examine these witnesses, such error was harmless under the circumstances of this case.

Both by constitution and statute, Brambila is entitled to a reversal of error below only if the denial of cross-examination resulted in a miscarriage of justice. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside … unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; Evid. Code, § 354 ["A verdict or finding shall not be set aside, nor shall the judgment or decision based thereon be reversed, by reason of the erroneous exclusion of evidence unless the court which passes upon the effect of the error or errors is of the opinion that the error or errors complained of resulted in a miscarriage of justice…."].)

California courts have generally found a complete denial of cross-examination to be prejudicial error. (See, e.g., *Estate of Kasson* (1900) 127 Cal. 496, 506 [error in denying cross-examination is reversible where the party "was too much restricted in her cross-examination of many of [the] respondent's witnesses"]; *CSV Hospitality Management, LLC v. Lucas*, *supra*, 84 Cal.App.5th at p. 125 [reversal required where [the] respondent in civil harassment restraining order proceeding was denied the right to cross-examine a witness as the appellate court could not know what the witness would have said on cross-examination or the effect of that testimony on the trial court's decision]; *Dole Bakersfield v. Workers' Comp. Appeals Bd.* (1998) 64 Cal.App.4th 1273,

16.

1277–1278 [denial of cross-examination of a rating expert was not harmless because it was impossible to say whether the questioning would have had some bearing on the finding]; *McCarthy v. Mobile Cranes, Inc.* (1962) 199 Cal.App.2d 500, 509–510 [complete denial of cross-examination is prejudicial error under the California Constitution].) "The right of cross-examination is fundamental, and its denial or undue restriction is frequently reversible error." (3 Witkin, Cal. Evidence (6th ed. 2024) Presentation at Trial, § 247 [denial or restriction of cross-examination in civil cases].)

A complete denial of cross-examination, however, may be found to be harmless error in unusual circumstances. " 'Not every instance in which a cross-examiner's question is disallowed will [the] defendant's right to a fair hearing be abridged, since the matter may be too unimportant [citations], or there may be no prejudice [citation], or the question may involve issues which can be brought up at a more appropriate time [citation]. However, where the subject of cross-examination concerns the matter at issue there can be no doubt that the refusal to permit such question[ing] results in a denial of a fair hearing.' " (*McCarthy v. Mobile Cranes, Inc.*, *supra*, 199 Cal.App.2d at p. 507.)

For example, in *Mueller v. J. C. Penney Co.* (1985) 173 Cal.App.3d 713, the trial court erroneously denied a husband the right of cross-examination as to his cause of action for loss of consortium, which was consolidated with his wife's action for alleged injury due to assault and battery that was decided adversely to her. (*Id.* at p. 722.) The appellate court found the court's denial of the husband's right to cross-examine witnesses was harmless error under "the unique circumstances of this case" because the husband's claim for loss of consortium was dependent on a finding of tortious conduct against his wife, which he would have been collaterally estopped from proving. (*Id.* at pp. 722–724.)

In our view, this case presents one of the rare circumstances in which we may find that Brambila could not have been prejudiced by the denial of the right to cross-examination. The only issue on whether to renew the restraining order was whether there

17.

was a reasonable probability that Brambila's wrongful acts would be repeated in the future. (*Cooper*, *supra*, 242 Cal.App.4th at p. 90.) This decision may be made based solely on the record in the original case. (*Ibid.*) The findings and evidence that underlie the original restraining order, as well as that order's validity, cannot be challenged in a proceeding to renew the restraining order. (*Id.* at p. 92.)

When State Center filed its request to renew the restraining order, it submitted the same evidence it submitted in support of the original restraining order—the December 2020 declarations of York, Goldsmith, Wells, Luna, and Wolfmann—as well as new declarations, dated January 25 and 26, from Goldsmith and York, respectively. Because Brambila cannot challenge the evidence underlying the original restraining order in this proceeding, cross-examination of the five witnesses concerning their original declarations would yield nothing relevant to the issue at hand—whether it is reasonably probable Brambila would repeat his wrongful acts.

That leaves Goldsmith's and York's most recent declarations. Brambila asserts the declarations presented new evidence on which he may cross-examine those witnesses. But neither witness offered evidence relevant to the issue of the probability of future harm. York expressed her fear that Brambila would cause herself and her family harm if he were released from custody based on his previous violent behavior and refusal to take responsibility for his conduct. Goldsmith stated she was concerned Brambila would pose a threat to the safety of State Center employees and students by repeating his offenses and causing injury to employees and students if he were released from custody because she understood he had not taken responsibility for his actions. But the fears and concerns of York and Goldsmith are irrelevant to whether Brambila will repeat his actions. Neither witness offered evidence that Brambila violated the original restraining order or threatened to do so.

Because the cross-examination of these witnesses would not elicit admissible evidence about the risk of Brambila repeating his violent behavior, Brambila cannot have

been injured by any loss of the right to cross-examine these witnesses. Accordingly, we conclude that the denial of cross-examination was, under the circumstances of this case, harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 23–24 [violations of federal constitutional rights require reversal unless we can declare the error harmless beyond a reasonable doubt].)[8]

## IV. The Combined Hearing

Brambila contends he was denied an evidentiary hearing on the merits of State Center's request to renew the restraining order. He asserts the trial court never held a hearing on the renewal request because the trial court moved directly from its ruling on the demurrer to its ruling on the request to renew the restraining order without allowing him to cross-examine witnesses or make a separate argument on the merits.

The record shows that the trial court notified the parties at the April 4 hearing and through its minute order that the May 13 hearing would encompass both the demurrer and the renewal request, and the parties should be prepared to move forward on the renewal request if the demurrer were overruled. The record further shows that, while the trial

---

[8]    The case Brambila relies on to establish a reversible violation of his right to cross-examination, *CSV Hospital Management, LLC v. Lucas*, *supra*, 84 Cal.App.5th 117 is distinguishable. There, a company petitioned for a workplace violence restraining order against a resident at a residential hotel the company ran, which was supported by affidavits from four hotel employees. (*Id.* at p. 121.) The resident denied all the allegations against him. (*Ibid.*) While one of those employees testified at the hearing on the petition, the trial court denied the resident's request to cross-examine the employee. (*Id.* at pp. 121–122.) The appellate court held by refusing to allow cross-examination the trial court violated the resident's due process rights, and the error was reversible because it was not known what the witness would testify to. (*Id.* at pp. 124–125.)

In contrast, the issue here is not the issuance of an original restraining order, but rather the renewal of one. Brambila does not dispute the allegations against him and he cannot do so as the only issue here is the risk he will repeat his violent behavior. As we have explained, this is not a situation where the witnesses Brambila sought to cross-examine could offer relevant evidence on the issue before the court.

court began the May 13 hearing by asking Brambila to address the demurrer, Brambila's argument addressed both the demurrer and the renewal of the restraining order.

On the renewal issue, Brambila argued State Center presented no evidence that any of the protected persons would be subjected to a future act and State Center simply made conclusory statements about believing there would be a future act without providing factual evidence. Brambila further argued it would be virtually impossible for the trial court to rule based on the original petition as there was no reporter's transcript of the March 1, 2021 hearing and the trial judge did not preside over that hearing. After these arguments, the trial court asked Brambila if he had "any arguments with the request to renew the restraining order or the demurrer?" Brambila responded by pointing out that a request to renew a restraining order is not automatic, but is discretionary, and "the petitioner has the burden of proof of showing that the renewal is required."

State Center's attorney then argued the merits of renewing the restraining order, contending that based on the underlying facts of the restraining order and Brambila's failure to accept responsibility for his behavior, there was a reasonable probability the conduct would be repeated in the future. In rebuttal, Brambila argued the court could not rely on the original record because there was not one and belief that the wrongful acts would recur was insufficient. It was after these arguments that the trial court both overruled the demurrer and renewed the request for a restraining order.

Based on the record, it appears the trial court's conduct of the hearing was an effort to control the litigation and conserve judicial resources. (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 701 ["A court's inherent powers to control litigation and conserve judicial resources authorize it to conduct hearings and formulate rules of procedure as justice may require."].) Since both parties argued the merits of whether to renew the restraining order, the trial court had the power to issue a ruling on that issue without allowing further argument.

Moreover, Brambila has not shown prejudice from the way the trial court conducted the hearing. As we discussed above, Brambila did not suffer prejudice from any loss of the right to cross-examine witnesses. He also has not shown what different arguments he would have made had the trial court allowed further argument on the renewal request. Notably, Brambila does not argue that the evidence before the trial court was insufficient to support its finding that there was a reasonable probability he would repeat his wrongful acts in the future.[9] Brambila has not shown how the result of the hearing would have been different had he been offered the opportunity to provide further argument on State Center's request to renew the restraining order.

## V. Whether the Renewed Restraining Order is Overbroad

The original restraining order required Brambila to stay 100 yards away from Fresno City College and all other State Center campuses. When the restraining order was renewed, its terms remained the same.[10] Brambila contends the renewed restraining

---

[9] He would be hard-pressed to do so even if we remanded the case for a rehearing as a month after the trial court's decision to renew the restraining order a jury found him guilty of five felonies arising from his attack on York with a firearm on December 10, 2020. His convictions would collaterally estop him from challenging the factual bases for the issuance of the original and renewed restraining orders. (Evid. Code, § 1300 ["[e]vidence of a final judgment adjudging a person guilty of a crime punishable as a felony is not made inadmissible by the hearsay rule when offered in a civil action to prove any fact essential to the judgment whether or not the judgment was based on a plea of nolo contendere"]; *Principal Life Ins. Co. v. Peterson* (2007) 156 Cal.App.4th 676, 687 [a judgment is final under Evid. Code § 1300 "even when an appeal from that judgment is pending"]; *Kerley v. Weber* (2018) 27 Cal.App.5th 1187, 1194 ["[a]pplying collateral estoppel to establish liability in a civil case based upon a prior felony conviction is appropriate when the prior criminal case established all the elements of the civil claims"].)

[10] Notably, the original and renewed restraining orders did not state that all State Center employees were protected persons; rather, they required Brambila to stay away from all State Center campuses. (See, e.g., *In re M.B.* (2011) 201 Cal.App.4th 1057, 1062 [the order listed " '[a]ll employees and staff' " of a public agency to be protected by the injunction].)

21.

order is overbroad because, in addition to ordering him to stay away from Fresno City College, it orders him to stay away from all other State Center campuses without ordering him to stay away from specific persons on those campuses.

When a restraining order is renewed, its terms remain the same. If Brambila wanted to modify the terms of the order, his recourse was to move to modify the renewed order. (§ 527.8, subd. (*l*)(1) [a workplace violence restraining order may be renewed "subject to termination or modification by further order of the court either on written stipulation filed with the court or on the motion of a party"].) While Brambila argued in his demurrer and response to State Center's renewal request that the restraining order was overbroad, he did not bring a motion to modify the restraining order. Because Brambila did not move to modify the order, we do not address the merits of his argument and instead conclude the trial court did not err in renewing the restraining order in its entirety.

## DISPOSITION

The trial court's May 13, 2024 order renewing the May 31, 2021 workplace violence restraining order is affirmed. The parties shall bear their own costs on appeal.


DE SANTOS, J.

WE CONCUR:


DETJEN, Acting P. J.


SNAUFFER, J.

22.